IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Anthony C. Lymon, ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 17 CV 50093 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Dr. Timothy Chamberlain and ) | |
| Wexford Health Sources, Inc., ) | |
| ) | |
|     *Defendants*. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motions to compel [199] [205] are granted.

### I. Background

Plaintiff Anthony C. Lymon brings claims under 42 U.S.C. § 1983 against Defendants Wexford Health Sources, Inc., a medical contractor for the Illinois Department of Corrections ("IDOC"), and Dr. Timothy Chamberlin alleging they were deliberately indifferent to his serious medical needs while he was an inmate at Dixon Correctional Center in 2016 and 2017. Plaintiff alleges that Defendants failed to promptly remove a large growing mass in Plaintiff's abdomen for approximately one year following its discovery. The mass was eventually removed and was determined to be cancerous.

As to Defendant Wexford, Plaintiff alleges that Wexford's policies, procedures, and practices caused substantial delays in his treatment, namely for offsite treatment and specialty care, and resulted in unconstitutional medical care. In support of this claim, Plaintiff obtained public versions of the expert reports issued in *Lippert, et al. v. Ghosh, et al.*, No. 1:10-CV-04603 (N.D. Ill.), a class-action lawsuit alleging inadequate healthcare provided to IDOC inmates. In *Lippert*, the court appointed two separate experts to assess the medical care provided to IDOC inmates and to issue reports with their findings and recommendations. The first report was issued in 2014, and a follow-up report was issued in 2018. Both the 2014 and 2018 reports included facility-specific findings relating to Dixon Correctional Center and identified numerous systemic failures in the prison healthcare system, including leadership issues and staffing deficiencies that resulted in delays relating to offsite services, referrals for specialty care, and follow-up visits with inmates. *See* Dkts. 223-4, 223-5.

On August 31, 2020, Plaintiff served a supplemental set of document requests on Defendant Wexford. Of relevance here, Request for Production No. 26 requested:

1

> All Documents underlying the *Lippert* reports (Bates Nos. Lymon 7646-8203), including but not limited to Documents Defendant and third-parties provided to the authors of the *Lippert* reports while the reports were being drafted and Documents referenced in or otherwise relied upon by the authors of the *Lippert* reports in reaching the opinions expressed in the reports.

Plaintiff's Motion, Ex. A, Dkt. 205-1. The relevant time period for the request was January 1, 2015 through October 31, 2018. *Id.*

Similarly, on September 1, 2020, Plaintiff issued a subpoena to the IDOC seeking the same documents underlying the *Lippert* reports. Plaintiff's Motion, Ex. A, Dkt. 199-1. However, the subpoena to the IDOC had a broader time period, namely from January 1, 2013 through December 31, 2018. The subpoena required production of responsive documents by September 15, 2020.

After receiving no response to the subpoena, Plaintiff followed up with the IDOC on September 16, 2020. On the same day, the IDOC mistakenly produced Plaintiff's medical records, which were not responsive to the subpoena. After several meet and confers between counsel for the IDOC and Plaintiff's counsel, the IDOC ultimately refused to produce any additional documents. Accordingly, on September 29, 2020, Plaintiff filed a motion to compel against the IDOC, seeking compliance with the subpoena pursuant to Federal Rule of Civil Procedure 45. Dkt. 199.

Following the filing of Plaintiff's motion, counsel for the IDOC informed Plaintiff's counsel in writing on September 30, 2020, why it could not comply with the subpoena. The IDOC argued, in part, that the request was burdensome based on the large volume of documents that the request included and the fact that the files previously produced to the experts were not maintained in a central location or stored in a manner that would be easily identifiable. Dkt. 217-3.

On September 30, 2020, Plaintiff also filed a motion to compel against Defendant Wexford for failing to produce documents responsive to Request for Production No. 26.[1] Defendant Wexford objected to the discovery as vague, overly broad, burdensome, and irrelevant. Plaintiff's Motion, Ex. C, Dkt. 2015-3. Defendant Wexford also asserted that the *Lippert* reports themselves were inadmissible. The Court held a hearing on both motions to compel on October 16, 2020. Following the hearing, the IDOC, Defendant Wexford, and Plaintiff filed written responses to the motions. *See* Dkts. 217, 219, 220.

## II. Standard of Review

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

---

[1] Plaintiff originally moved to compel Defendant Wexford to produce documents responsive to Requests for Production Nos. 25 and 26. However, after filing the motion the parties resolved Request for Production No. 25.

2

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)." *In re Kleimar N.V. v. Benxi Iron & Steel America, Ltd.*, No. 17-cv-01287, 2017 U.S. Dist. LEXIS 124437, at *19 (N.D. Ill. Aug. 7, 2017) (internal quotation marks and citation omitted). "A party seeking such discovery should point to something that demonstrates that the requested documents are both relevant and proportional to the needs of the case, as Rule 26 dictates." *Allstate Insurance Co. v. Electrolux Home Products*, No. 16-cv-4161, 2017 U.S. Dist. LEXIS 189229, at *10 (N.D. Ill. Nov. 15, 2017); *see also Autotech Techs. Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D. Ill. 2006) ("The initial inquiry in enforcement of any discovery request is one of relevance."). "If discovery appears relevant, the burden is on the party objecting to a discovery request to establish the request is improper." *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020).

### III. Discussion

### A. IDOC

The IDOC's main objection to the subpoena is based on undue burden. But first, the Court will address the timeliness of the IDOC's objection to the subpoena. Federal Rule of Civil Procedure 45(d)(2)(B) provides that a person commanded to produce documents may object, but the objection must be in writing and served on the party by the time specified for compliance or within 14 days after the subpoena is served, whichever is earlier. Here, the subpoena was served on September 1, 2020 and compliance was required by September 15, 2020. The IDOC did not respond to the subpoena or serve any objection by September 15, 2020.

It was not until September 30, 2020 that the IDOC stated its objection in writing. This late objection is in part explained by the fact that an IDOC employee mistakenly accepted the subpoena believing it was a routine request for inmate records. Counsel for the IDOC was first retained on September 28, 2020. Nevertheless, counsel for the IDOC was able to speak with Plaintiff's counsel about its objections before the instant motion was filed. The IDOC's objections are now fully briefed and before this Court, and Plaintiff has not shown any prejudice if the Court were to consider the objections in deciding this motion. *See American Federation of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (N.D. Tex. 2015) ("Unusual circumstances warranting consideration of [untimely] objections [to subpoena duces tecum] have included those where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena.") (internal quotation marks and citation omitted). Moreover, the Court may *sua sponte* quash a subpoena or issue a protective order for good cause shown. *See Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943 LAB (JMA), 2018 WL 2387580, at *4 (S.D. Cal. May 24, 2018) ("Even assuming *arguendo* Defendant's objections had been waived, because the subpoena seeks information not relevant to the claims or defenses in this case, the Court would still not require compliance with the subpoena."); *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012); Fed. R. Civ. P. 26(b)(2)(C) (allowing a court to issue a protective order on its own initiative to limit discovery if it is outside the scope permitted by Rule 26(b)(1)). Accordingly, the Court will consider the IDOC's objections in deciding the instant motion.

Plaintiff seeks to compel the IDOC's compliance with the subpoena, arguing that the documents underlying the *Lippert* reports are both relevant to Plaintiff's *Monell* claim against Defendant Wexford and proportional to the needs of the case.[2] "To prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show more than the deficiencies specific to his own experience[;]" he must show "systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system." *Daniel v. Cook Cty.*, 833 F.3d 728, 734-35 (7th Cir. 2016). "District courts addressing discovery-related disputes in cases involving *Monell* claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012).

Plaintiff references specific portions of the *Lippert* reports to show the documented pattern of systemic deficiencies and untimely medical care at Dixon Correctional Center allegedly caused by Defendant Wexford's policies and practices. Both the IDOC and Defendant Wexford argue that Plaintiff has not shown how documents before and after his treatment in 2016 and 2017 would be relevant to his claims. It is true that the 2014 and 2018 reports and the underlying documents would both predate and postdate Plaintiff's treatment. Nevertheless, Defendant Wexford's policies and practices shortly before and after Plaintiff's claims may show that Wexford used similar cost-cutting polices during 2016 and 2017 that caused the inadequate medical care Plaintiff alleges. Moreover, Plaintiff points out that the 2018 report found no improvement in the provision of specialty care from the 2014 report. *See Von Ryburn v. Obaisi*, No. 14 CV 4308, 2020 WL 3868715, at *13 (N.D. Ill. July 9, 2020) ("A jury could find that Wexford knew that collegial review threatened inmates' constitutional right to obtain adequate health care for their objectively serious medical needs, but nevertheless maintained the policy. The key predicate of such a finding is the Lippert Report, both volumes of which Wexford's corporate representative knew about shortly after their release."). Therefore, the apparent deficiencies found in the records underlying both the 2014 and 2018 reports would clearly be relevant to Plaintiff's *Monell* claim. The underlying documents will either establish or refute Plaintiff's claim that Defendant Wexford's policies or practices caused the delays in his offsite services and specialty care.

Nevertheless, the IDOC takes issue with Plaintiff's request for all documents underlying the *Lippert* reports, stating that "[n]o parameters were included in this request or specification of the type or class of documents sought." IDOC's Response at 4, Dkt. 217. What the IDOC fails to mention is that the subpoena is limited to the time period of January 1, 2013 through December 31, 2018.[3] At oral argument, Plaintiff further limited the subpoena to documents relating only to Dixon

---

[2] Because the IDOC and Defendant Wexford raise similar arguments about relevance, proportionality, and undue burden, the Court will address all of those arguments in relation to the subpoena to the IDOC.

[3] Defendant Wexford makes a similar argument of undue burden, claiming it provided documents to the *Lippert* experts dating back to 2006 and spanning approximately 14 years. Yet, Request for Production No. 26 was limited to January 1, 2015 through October 31, 2018. It is unclear why the relevant time period for the discovery issued to the IDOC and Defendant Wexford were not identical. However, because the parties do not raise a specific objection, the Court will not address it here. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 222 (N.D. Ill. 2013) ("[T]he Court does not compel parties to produce documents that were not requested.").

4

Correctional Center. Accordingly, this request for facility-specific documents spans only a few years before and after Plaintiff's treatment and therefore is not overly broad and is proportional to the needs of the case. *See Awalt*, 2012 WL 6568242, at *6 (finding a plaintiff's request for documents pertaining to medical care over the five-year period at one facility not overly broad because the plaintiff must show "that her husband's constitutional rights were violated as a result of a widespread policy, practice, or custom of denying medical care that the Defendants were aware of and failed to correct").

The Court will now turn to the IDOC's claim of undue burden. The IDOC has attached a declaration from its legal counsel in support, but it falls short of showing an undue burden. *See* IDOC's Response, Ex. 4, Dkt. 217-4. Although the declaration states that the documents provided for the 2018 report alone range from 15,000 to 20,000 documents in addition to medical records, it does not indicate whether these documents relate only the Dixon Correction Center, as opposed to the 27 IDOC facilities that were part of the report. The IDOC also makes no claim as to the number of documents provided for the 2014 report and instead makes conclusory allegations that "[i]t would be impossible to identify documents produced to the 2014 report authors as the files are not in a central location or stored in a manner that would be easily identifiable" and "[m]any of the individuals at these facilities, with responsibilities of tendering such documentation are no longer employed by IDOC." *Id.*

While this may be true, Plaintiff points out that the *Lippert* reports make specific references to categories of documents and inmate files that were reviewed. Although these reports were redacted when filed publicly, Plaintiff argues that the IDOC, as a party to the *Lippert* action where the documents were produced, cannot make a compelling claim of undue burden in identifying and producing the same documents. In light of the identification of many of the underlying documents within the reports themselves, the Court agrees that the IDOC's receipt of the confidential versions of those reports reduces the burden on the IDOC in identifying the documents requested by Plaintiff.[4] The Court also finds this procedure much less burdensome than if Plaintiff had requested all documents between January 1, 2013 and December 31, 2018 for inmates at Dixon Correctional Center that sought offsite services. Here, the documents Plaintiff seeks have already been collected and produced once. Plaintiff is now seeking those same documents so that his own expert may opine on them.

Nevertheless, the IDOC maintains that it cannot identify and produce the underlying documents that the experts relied upon, arguing that the *Lippert* experts would be in the best position to produce such documents. Although the Court understands the difficulty in identifying documents the experts relied upon, as opposed to documents that were provided to the experts or referenced in the reports, this does not excuse the IDOC from responding to the subpoena entirely. Moreover, the experts themselves are not a source of this information. Not only do the orders appointing the experts in the *Lippert* case restrict the experts' use of the underlying documents,[5] but Plaintiff has pointed to other rulings in the *Lippert* case suggesting that the experts do not have

---

[4] Defendant Wexford, although dismissed as a party in the *Lippert* case before the experts were appointed, also received confidential versions of the reports.

[5] Defendant Wexford admits that "[e]ven if Plaintiff had issued records or deposition subpoenas to the correct source of the reports [i.e. the experts], the *Lippert* Orders would again prohibit the authors to produce [sic] the requested documents." Wexford's Response at 4, Dkt. 219.

the underlying records. *See* Plaintiff's Reply at 3, Dkt. 220. Accordingly, the IDOC should first produce the documents it provided to the experts or are referenced in the reports. Should an issue arise relating to documents the experts relied upon that are not otherwise easily identifiable or referenced in the reports, Plaintiff should attempt to meet and confer with counsel to resolve this issue in a timely manner.

The IDOC further argues that Defendant Wexford, as a party to this case, is a more convenient source for the discovery and should be required to respond to Plaintiff's discovery request first. It is true that the IDOC is a non-party to this case, and non-parties are often afforded greater protections in when responding to a subpoena. *See Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *1 (N.D. Ill. Jan. 6, 2005). However, the IDOC is not truly a disinterested third party to this case. Plaintiff alleges he received constitutionally inadequate medical care at an IDOC correctional facility by one of the IDOC's medical contractors. It would be difficult to say that the IDOC does not have an interest in the outcome of this case. Accordingly, this Court does not find that he IDOC is entitled to greater protections as a third-party to this case. Regardless, it would only benefit the IDOC and Defendant Wexford to coordinate their efforts in producing documents because there will presumably be some overlap. For the reasons stated above, the Court finds that the IDOC has not shown that it will suffer an undue burden if ordered to produce the requested documents.

Lastly, the IDOC argues that producing the requested documents would needlessly compromise third-party inmates' protective information. The Court agrees that these inmates have valid privacy interests in their records. But again, such concerns do not prevent the production of all the documents requested here. First, the IDOC should redact the non-party inmates' personal identifiers from the documents produced. *See Doe v. MacLeod*, No. 3:18-CV-3191, 2019 WL 2601338, at *3 (C.D. Ill. June 25, 2019) (finding error by not ordering IDOC to redact the personal identifiers of the non-party offenders when producing documents). This appears to have already been done during the first production based on the reports' references to generic patient identifiers. Second, the confidentiality order entered in this case on November 7, 2017, which was signed by counsel for Plaintiff, Wexford, and the IDOC, applies to "[a]ll materials produced or adduced in the course of discovery" and "documents produced in response to subpoenas[.]" Confidentiality Order at 1, Dkt. 48. No one has argued that the confidentiality order is somehow inapplicable to the documents Plaintiff seeks. Without any evidence to the contrary, this Court finds that any privacy concerns regarding the documents of other inmates would be adequately protected. Should the parties determine that additional protection is required once they have reviewed the responsive documents, they should submit a proposed protective order to this Court.

### B. Wexford

Defendant Wexford's objections to producing the documents underlying the *Lippert* reports greatly overlap with the ones outlined above by the IDOC. Unlike the IDOC, however, Defendant Wexford has not provided an affidavit in support of its claim of undue burden. Accordingly, the Court will not re-analyze the arguments it has rejected above with respect to Defendant Wexford and similarly finds that Defendant Wexford has not rebutted Plaintiff's showing that the documents requested are relevant or proportional or otherwise sufficiently

supported its claim of undue burden. However, the Court will address two additional arguments made by Defendant Wexford.

First, a major part of Defendant Wexford's objection to producing the documents underlying the *Lippert* reports is its argument that the reports themselves are inadmissible hearsay. This argument fails for several reasons. Despite Defendant Wexford's lengthy argument about the inadmissibility of the reports, Wexford fails to address the possible use of the reports and/or the underlying documents for non-hearsay purposes. *See Von Ryburn*, 2020 WL 3868715, at *13 ("The Lippert Report is admissible, moreover, for the non-hearsay purpose of showing that Wexford was on notice of potentially serious shortcomings with its collegial review policy, including the policy's effect on inmates' ability to obtain needed care from an outside specialist.") (collecting cases). Defendant Wexford also makes a conclusory argument that because it believes the reports are inadmissible, so too are all the documents underlying the reports. *See* Wexford's Response at 6-7, Dkt. 219 ("The *Lippert* reports are inadmissible; thus, all documents underlying the *Lippert* reports must also be inadmissible."). However, Defendant Wexford does not cite any authority to support this claim, and as set forth above there may be non-hearsay purposes for which the admission of the *Lippert* reports and/or their underlying documents are sought. In addition to the notice example set forth above, Plaintiff alleges that he intends to provide the documents underlying the *Lippert* reports to his own expert to review. The source of an expert's opinion need not be admissible at trial in order for the opinion to be admissible. *See* Fed. R. Evid. 703.

Regardless, the reports' admissibility is not before the Court. Not only is Plaintiff seeking the documents underlying the reports, not the reports themselves, but Plaintiff has not yet sought to introduce these documents or opinions based on these documents at summary judgment or trial. *See Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020) ("Because discovery is concerned with 'relevant information' not 'relevant evidence' the scope of relevance for discovery purposes is necessarily broader than it is for trial evidence under Federal Rule of Evidence 401."). Therefore, the only issue before the Court is whether the documents underlying the reports are discoverable. *See* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *4 (N.D. Ill. Sept. 25, 2020) ("The natural tendency of courts is to allow the civil litigant to discover information that is broadly 'relevant,' even if there may be a strong argument against its admissibility.").

Second, Defendant Wexford argues that responding to Plaintiff's discovery request would violate the court orders entered in the *Lippert* case. *See* Wexford's Response, Ex. 1 and 2, Dkts. 219-1, 219-2. However, these orders are not as broad as Defendant Wexford asserts.

In the 2013 and 2017 orders appointing the experts, the court in *Lippert* stated, in part: "The Expert, his consultants and assistance shall not provide opinions and/or testimony in unrelated cases based on knowledge and/or information gained in the course of performing their services in this matter." Wexford's Response, Ex. 1 at 2, 9, Dkt. 219-1. The order further stated: "The Expert and his consultants and assistants, and counsel for any party, shall maintain the confidentiality of all material obtained and reviewed pursuant to this Order, as if all material was marked 'Attorneys Eyes Only' as set forth in the Protective Order entered by this Court on April 11, 2012." *Id.* at 5, 12. However, as Plaintiff points out, the protective order entered in

7

*Lippert* states that "[n]othing in this Order shall prevent a Party from disclosing or using any of its own documents, information or things as it deems appropriate." *Lippert*, No. 1:10-cv-04603, Dkt. 111 at 8. Additionally, the court in *Lippert* acknowledged that an intervening party was able to request the underlying documents from the IDOC and Wexford directly for his case. *See Lippert*, No. 1:10-cv-04603, Dkt. 653 at 3 n.3 ("The originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim."). As such, ordering Defendant Wexford or the IDOC to produce the underlying documents does not violate these court orders.[6]

### IV. Conclusion

Therefore, Plaintiff's motions to compel against the IDOC and Defendant Wexford are granted. The IDOC shall produce documents responsive to the subpoena and Defendant Wexford shall produce documents responsive to Request for Production No. 26.

Date: November 24, 2020　　　　　　　By:　*Lisa A. J[ensen]*
　　　　　　　　　　　　　　　　　　　　　Lisa A. Jensen
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[6] Defendant Wexford also cites the confidentiality provisions of the consent decree regarding documents gathered by the monitor in the *Lippert* case. Wexford's Response, Ex. 2, Dkt. 219-2. The Court will not address these provisions because Plaintiff has made it clear that he is not seeking documents underlying the monitor's report. *See* Plaintiff's Reply at 8 n. 5, Dkt. 220.